**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE CO., LTD., and HUAWEI DIGITAL TECHNOLOGIES (CHENGDU) CO., LTD.<br><br>     Plaintiffs,<br><br>  v.<br><br>VERIZON COMMUNICATIONS, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, and VERIZON BUSINESS NETWORK SERVICES, INC.<br><br>     Defendants. | C.A. No. 6:20-CV-00090<br>JURY TRIAL REQUESTED |

**VERIZON'S MOTION TO DISMISS CLAIMS OF INDIRECT INFRINGEMENT
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Verizon moves to dismiss portions of the Complaint filed by Plaintiffs Huawei Technologies Co., Ltd., Huawei Device Co, Ltd., and Huawei Digital Technologies (Chengdu) Co., Ltd. (collectively "Huawei" or "Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6). The Complaint does not support a plausible claim for indirect infringement, for multiple independent reasons: (a) it fails to identify any basis for pre-suit indirect infringement as to U.S. Patent No. 8,761,839; (b) it fails to provide any plausible factual allegations to support the specific intent required for induced infringement; and (c) it fails to provide plausible factual allegations to support the requirements of no substantial non-infringing uses and materiality for contributory infringement. For these reasons, Huawei's indirect infringement allegations should be dismissed.

**1.  Statement of Facts**

Plaintiffs filed their Complaint against Verizon on February 5, 2020, alleging infringement of U.S. Patent Nos. 7,965,709 ("the '709 Patent"), 8,154,986 ("the '986 Patent"), 10,027,693 ("the

'693 Patent"), 7,609,288 ("the '288 Patent"), 9,521,366 ("the '366 Patent"), 7,715,832 ("the '832 Patent"), and 8,761,839 ("the '839 Patent") (collectively, the "Asserted Patents").  The Complaint asserts direct infringement and indirect infringement, including both induced infringement and contributory infringement.

**2.      Legal Standard**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *Admiral Ins. Co. v. W. Rest Haven, Inc.*, No. 6:19-cv-00190-ADA-JCM, 2019 WL 6037259, at *2 (W.D. Tex. Sept. 16, 2019) (Albright, J.); *ProTradeNet, LLC v. Predictive Profiles, Inc.*, 369 F. Supp. 3d 788, 794 (W.D. Tex. 2019) (Albright, J.).

**a.      Induced Infringement**

For claims of induced infringement, the complaint must plead facts that plausibly show the defendant: "(1) had actual knowledge of the patent; (2) knowingly induced a third-party to infringe the patent; and (3) had specific intent to induce the patent infringement."  *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-cv-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)).  Moreover,

2

"[t]he mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1364 (Fed. Cir. 2017).  "There must be some showing by the Plaintiff of the accused infringer's 'taking of affirmative steps to bring about the desired result [of infringement].'"  *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677, at *4 (W.D. Tex. Nov. 28, 2017) (citing *Global–Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065 (2011)).

      **b.**    **Contributory Infringement**

For claims of contributory infringement, a patentee must allege:  "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Affinity Labs*, 2014 WL 2892285 at *8 (internal quotation marks omitted).  Additionally, "[t]o state a claim for contributory infringement, [] a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).  "[S]imply mak[ing] the conclusory statement that defendants' accused products are not staple articles of commerce and have no substantial uses that do not infringe the [Asserted Patent]" will not suffice.  *Iron Oak Techs.*, 2017 WL 9477677, at *6.

**3.**    **The Complaint Fails to Adequately Plead Induced Infringement**

The Complaint fails to set forth a plausible claim for induced infringement because it does not allege facts that plausibly show the defendant had specific intent to cause another to directly infringe and knew the other's act constituted infringement.

      **a.**    **The Complaint Fails to Plead Pre-Suit Knowledge of The '839 Patent or of Alleged Infringement of the '839 Patent.**

Huawei concedes in its Complaint that Verizon had no pre-suit knowledge of any claim of infringement by Huawei on the '839 Patent. Indeed, Huawei never raised this patent during pre-suit discussions between Verizon and Huawei. Compl. ¶ 35. At best, Huawei relies on post-complaint knowledge of the '839 Patent. Compl. ¶ 323. But allegations of post-suit knowledge are insufficient to establish the requisite knowledge for an inducement claim. *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299 at *3 (W.D. Tex. June 17, 2011) ("To the extent [plaintiff] relies on knowledge of [plaintiff]'s patent after the lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for indirect infringement.").[1] Because Huawei relies exclusively on post-filing knowledge, its induced infringement claim for the '839 Patent should be dismissed.

      **b.**    **The Complaint Fails to Plead Facts Plausibly Supporting that Verizon Had Specific Intent to Encourage Others' Alleged Infringement of the Asserted Patents.**

With respect to its allegations regarding induced infringement prior to Huawei filing the Complaint, the Complaint falls short of showing specific intent. The Complaint vaguely asserts that Verizon induced users to infringe, but provides no evidence that Verizon had the specific intent to induce users to practice the asserted claims.

---

[1] *See also Xpoint Techs., Inc. v. Microsoft Corp.,* 730 F. Supp. 2d 349, 357 (D. Del. 2010) (dismissing claims of indirect infringement because "knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement"); *Mallinckrodt, Inc. v. E–Z–Em Inc.,* 670 F. Supp. 2d 349, 354 n. 1 (D. Del. 2009) ("The Court is not persuaded by Plaintiffs' contention that the requisite knowledge can be established by the filing of Plaintiff's Complaint."); *Medsquire, LLC v. Compulink Bus. Sys., Inc.*, No. CV 2:11-10122 (JHN) (PLAx), 2012 WL 13012704, at *3 (C.D. Cal. May 16, 2012); *Brandywine Commc'ns Techs., LLC v. Casio Computer Co.*, 912 F. Supp. 2d 1338, 1345 (M.D. Fla. 2012) ("The weight of authority addressing the knowledge required for indirect infringement, especially following the Supreme Court's decision in *Global–Tech,* requires a plaintiff to allege that defendant had pre-suit knowledge of the patents-in-suit.").

Simply pleading that a defendant advertises or promotes its products generally is not sufficient.  Pleading specific intent is a "demanding" requirement not satisfied by "unsubstantiated assertions."  *Affinity Labs*, 2014 WL 2892285, at *7.  "Conclusory allegations, or legal conclusions masquerading as factual conclusions, will not suffice to prevent a motion to dismiss."  *Iron Oak Techs.*, 2017 WL 9477677, at *6.  Rather, courts require the identification of a "particular statement or material" suggesting specific intent.  *Dodots Licensing Sols. LLC v. Lenovo Holding Co.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018).  Plaintiffs must point to advertising or promotional materials that "track the asserted patents" to support specific intent to induce infringement.  *Memory Integrity LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1195 (D. Or. 2015).

Here, the Complaint falls far short of these requirements.  Regarding the '709 and '986 Patents, the Complaint alleges ***no facts***, nor support, that suggest any connection between Verizon and end users or customers to encourage them to even use the accused products[2] in any particular way, much less a specific intent to encourage acts of infringement.  *See* Compl. ¶¶ 76-81, 137-145.

For the '288, '832, '366, '693, and '839 Patents, the Complaint generally alleges that Verizon induces others to infringe by "encouraging, advertising (including by internet websites, television, store displays, print advertisements, etc.), promoting, and instructing others to use and/or how to" operate the accused products, and cites some advertising and promotional materials.  *See* Compl. ¶¶ 176, 215, 261, 289, 321.  Specifically, as to the '288 Patent, the Complaint cites a high-level brochure (a 2-page PDF) describing features of Cisco WebEx Verizon.  *Id.* ¶ 215.  For the '832 Patent, the Complaint cites two web pages merely identifying

---

[2] The EFP products in connection with the '709 Patent and the Cisco Convergence Products and the Juniper Convergence Products in connection with the '986 Patent.

5

features of Verizon Smart Family Service.  *See id.* ¶ 289 (referring to "the web pages above").  For the '366 Patent, the Complaint cites a general Verizon webpage for Cisco WebEx Verizon.  *See id.* ¶ 261.  For the '693 Patent, the Complaint cites websites and press releases generally describing cloud-based security services.  *See id.* ¶ 176.  And for the '839 Patent, the Complaint cites two YouTube videos.  *See id.* ¶¶ 309, 315.[3]

However, those materials, at most, show how the accused products *work*, not how to use the accused products to allegedly *infringe*, and therefore cannot support an allegation of induced infringement.  *See Memory Integrity*, 144 F. Supp. 3d at 1196 ("[T]he quotations do not teach how to use [the defendant's] products to infringe [the plaintiff's] patents, but simply describe how [the defendant's] products work."); *Dodots Licensing Sols. LLC*, 2018 WL 6629709, at *4 ("Although Plaintiff cites Defendants' website as support for its allegation, it does so generically and does not identify any particular statement or material that plausibly suggests Defendants intend to induce infringement of the Patents-in-Suit."); *IP Commc'ns Sols., LLC v. Viber Media (USA) Inc.*, No. CV 16-134-GMS, 2017 WL 1312942, at *4 (D. Del. Apr. 5, 2017) (Plaintiff "only provides examples of webpages that relate to [defendant's] application and customers' interaction with the VoIP application.  [Plaintiff] fails to allege facts supporting how [defendant] specifically instructed or directed customers to use the [defendant's] application and corresponding server system in a manner that would infringe the '071 patent.").  Because Huawei's factual allegations, even if accepted as true, would not meet the requirement of specific intent, all its induced infringement claims fail and should be dismissed.

---

[3]  The Complaint cites to two YouTube videos allegedly describing One Talk.  Compl. ¶¶ 309, 315.  However, neither video is publicly accessible; both indicate "[v]ideo unavailable" stating that "[t]his video is private."

**4.     The Complaint Fails to Adequately Plead Contributory Infringement**

The Complaint fails to set forth a plausible claim for contributory infringement because it does not allege facts that plausibly show that there are no non-infringing uses for the accused products.

    **a.     The Complaint Fails to Plead Pre-Suit Knowledge of Alleged Contributory Infringement of the '839 Patent.**

As discussed above, Huawei concedes in its Complaint that Verizon had no pre-suit knowledge of any claim of infringement by Huawei on the '839 Patent. Just as allegations of exclusively post-suit knowledge are fatal to an inducement claim, they are insufficient to establish the requisite knowledge for a contributory infringement claim. *See Aguirre*, 2011 WL 2471299 at *3 ("Like contributory infringement, direct infringement by inducing infringement has an essential knowledge component. . . . Absence of knowledge is a fatal flaw in a claim for indirect patent infringement."). Because Huawei relies exclusively on post-filing knowledge, its contributory infringement claim for the '839 Patent should also be dismissed.

    **b.     The Complaint Fails to Plead Facts Showing There Are No Substantial Non-Infringing Uses for the Accused Products.**

For all of the Asserted Patents, the Complaint fails to allege facts sufficient to allow an inference that there are no substantial non-infringing uses for the accused products—and furthermore, the Complaint provides clear, affirmative evidence that the accused products have numerous non-infringing uses and functionalities. The Complaint cites documents that clearly state that the accused products have a wide variety of non-accused functionalities. Therefore, Huawei itself has "supplie[d] the very facts which defeat its claims of contributory infringement" by introducing non-infringing uses for the accused products into the Complaint. *See In re Bill of Lading*, 681 F.3d at 1338 ("Where the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does

7

not lie. The materials regarding [Defendants'] products from which [Plaintiff] quotes, and, which are attached to the amended complaints, contain repeated descriptions of non-infringing uses to which the accused products can be put.").

For the '709, '986, and '693 Patents, the Complaint cites to configuration guides for the various accused routers, switches, and frameworks that identify many non-accused features of those products. The '709 Patent allegations accuse Cisco's "Ethernet Flow Point functionality," but the configuration guide for the accused Cisco ASR9000 series router in the Complaint (*see, e.g.*, Compl. ¶ 55 (citing https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k_r53/lxvpn/configuration/guide/b-l2vpn-cg53xasr9k.pdf)) lists many other non-accused capabilities, including "Hot Standby Routing Protocol," "Multiple Spanning Tree Protocol," and "Layer 2 Access Lists." Similarly, for the '986 Patent, the Complaint cites to a configuration guide for the accused "Cisco Convergence Products" (*see, e.g.*, Compl. ¶ 95 (citing https://www.cisco.com/c/en/us/td/docs/ios-xml/ios/iproute_bgp/configuration/xe-16/irg-xe-16-book/bgp-pic-edge-for-ip-and-mpls-vpn.pdf)) which lists numerous non-infringing uses besides the accused fast convergence feature. Examples include the "MPLS VPN--BGP Local Convergence," "Cisco Express Forwarding," and standard BGP convergence. Similarly, the configuration guide for the "Juniper Convergence Products" (*see, e.g.*, Compl. ¶ 116), also accused under the '986 Patent, lists multiple non-infringing uses apart from the fast convergence feature, including "VPN Graceful Restart," "Creating Unique VPN Routes Using VRF Tables," and standard BGP convergence. The '693 Patent allegations accuse the "Juniper ATP Products," but the cited Juniper Sky Advanced Threat Prevention framework administration guide (*see, e.g.*, Compl. ¶ 158 (citing https://www.juniper.net/documentation/en_US/release-independent/sky-atp/information-products/pathway-pages/sky-atp-admin-guide.pdf) describes many non-

8

infringing uses other than the malware monitoring architecture. For example, the framework allows users to quarantine infected systems, prevent data exfiltration, and disrupt lateral movement.

Additionally, for the '709 and '986 patents, the Complaint repeatedly states that the accused Cisco (accused by both the '709 and '986 Patent allegations) and Juniper (accused by the '986 Patent allegations) products "***can be*** configured to" or "***are operable*** to" perform the allegedly infringing functionality. *See, e.g.*, Compl. ¶¶ 55, 95, 116, 126. Further, the documents cited in the Complaint state that the accused features must be enabled or configured in order to function. *See* https://www.cisco.com/c/en/us/td/docs/ios-xml/ios/iproute_bgp/configuration/xe-16/irg-xe-16-book/bgp-pic-edge-for-ip-and-mpls-vpn.pdf ("When the BGP PIC feature is enabled, BGP calculates a backup or alternate path per prefix and installs it into BGP RIB, IP RIB, and FIB."); https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k_r5-3/lxvpn/configuration/guide/b-l2vpn-cg53xasr9k.pdf ("You can perform a variety of operations on the traffic flows when a router is configured with EFPs on various interfaces."); https://www.juniper.net/documentation/enUS/junos/information-products/pathway-pages/config-guide-routing/config-guide-routing-bgp.pdf (" . . . with the BGP PIC feature enabled . . . "); https://www.juniper.net/documentation/enUS/junos/information-products/pathway-pages/config-guide-vpns/config-guide-vpns-layer-3.pdf ("BGP Prefix-Independent Convergence (PIC) Edge allows you to install a Layer 3 VPN route in the forwarding table as an alternate path"). The fact that Huawei limits its infringement theories to particular features or configurations of the accused products creates an inference that there are other non-accused configurations for the accused products as well. *See U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. CV 6:12-366 (MHS) (JDL), 2013 WL 8482270, at *4 (E.D. Tex. Mar. 6, 2013) ("In fact, [Plaintiff's] allegation

that customers infringe when they use operating systems and components in accordance with [Defendant's] instructions actually creates an inference that they might otherwise be used in a non-infringing manner. Accordingly, the Court finds that USEI's contributory infringement allegations fail to state a claim.").

For the '288 and '366 Patents, the Complaint cites to a Verizon webpage advertising Cisco Webex (*see, e.g.,* Compl. at ¶¶ 215, 261 (citing https://enterprise.verizon.com/products/business-communications/unified-communications-and-collaboration/cisco-webex/)) that lists various non-accused features of the accused Webex product, such as "flexible application and enterprise-grade security integration," "persistent messaging," "file sharing," "integration with most 3rd party enterprise applications," and viewing "[u]p to 25 attendees at once at up to 720p screen resolution." None of those features of Webex mentioned in this cited document are the accused direct screen share or conference signal playing features. Therefore, all of those features are non-accused and non-infringing uses of the accused product. By citing documents that reference non-accused and non-infringing features in the Complaint, Huawei rebuts its own allegations of contributory infringement, and shows that the accused products clearly have non-infringing uses. *See Sonrai Sys., LLC v. AMCS Grp. Inc.*, No. CV 16-9404, 2017 WL 4281122, at *8 (N.D. Ill. Sept. 27, 2017) ("AMCS contends that AMCS's website—which Sonrai cited to identify the purportedly infringing uses—discloses several uses of the RFID system that do not infringe the patent. The court agrees that AMCS's website discloses non-infringing uses. According to the website, the AMCS RFID system is also capable of providing proof of service to customers, tracking the precise number of receptacles lifted, and reporting waste hauling vehicle locations. Sonrai has no substantive response to the non-infringing uses that AMCS has identified. Accordingly, Sonrai's claim for contributory infringement is dismissed.") (internal citations omitted).

Similarly, the Verizon Smart Family Service accused of infringing the '832 Patent has numerous non-accused functionalities, many of which are specifically referenced in the documents cited by Huawei in the Complaint. Non-accused features include managing blocked contacts and blocked numbers, trusted contacts, sending a location check-in from a child's app, requesting pick up from a child's app, arrival and departure alerts, limiting data usage, blocking purchases, limiting texting, and setting call restrictions. *See* Compl. ¶ 278 (https://www.verizonwireless.com/support/how-to-use-verizon-smart-family/). The same is true for the Verizon One Talk application accused of infringing the '839 Patent, which likewise has many non-accused features, such as Account Codes (which allow a user to associate individual calls with a specific code for tracking purposes), an "Automated Receptionist," Calling Line ID Delivery, Custom Ringback, Group Forwarding, Hunt Group, Music on Hold, Remote Group Pickup, office hours scheduling, Virtual On-Net Extensions, Anonymous Call Rejection, Automatic Callback, Bridge Line, Busy Lamp Field, Call Barge, Call Forwarding, Call Hold, Call Move, Call Park & Retrieve, Call Transfer, Call Waiting, Caller ID Blocking, Caller Name ID, Calling Plan, Do Not Disturb, Extension Dialing, Fax, Intercom, Internal Calling ID, Line Sharing, voicemail, Pre-Alerting Announcement, Remote Call Pickup with Barge In, Selective Call Acceptance / Rejection, Simultaneous Ring Service, Text Messaging, Video Calling, and Voicemail Operator Opt Out, none of which are addressed in the Complaint. *See* https://www.verizonwireless.com/support/one-talk-features/.

Additionally, the Complaint fails to sufficiently allege that the accused components are a material part of the invention. In order to properly plead contributory infringement, the Complaint must allege specific facts regarding materiality. *See Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, No. CV 14-874 (SLR) (SRF), 2015 WL 4036951, at *6 (D. Del. July 1, 2015)

11

("Section 271(c) specifies that the allegedly infringing component must 'constitut[e] a material part of the invention,' and recent case law from this court identifies the materiality requirement as an element of the analysis. This court requires that facts regarding all elements of a claim for contributory infringement must be pleaded.") (internal citation omitted); *Core Wireless Licensing S.A.R.L. v. Apple, Inc.*, No. CV 6:14-752 (JRG) (JDL), 2015 WL 4910427, at *5 (E.D. Tex. Aug. 14, 2015) ("But none of these generic allegations provide any factual basis upon which a plausible inference of contributory infringement can be drawn. Core Wireless does not identify the general functionality of the respective patents, the hardware and/or software components it accuses, or how those components are material and especially adapted for infringement."). For each of the Patents-in-Suit, the Complaint merely includes a formulaic recitation that the accused component is "material." Compl. ¶¶ 79, 141, 178, 216, 262, 290, 322. Courts in this District have held that "[c]onclusory allegations, or legal conclusions masquerading as factual conclusions, will not suffice to prevent a motion to dismiss." *Iron Oak Techs.*, 2017 WL 9477677, at *6. Huawei's allegations consist of bare legal conclusions, which cannot sustain its allegations of contributory infringement. Therefore, because the Complaint itself reveals that the accused products have substantial non-infringing uses, and because the Complaint fails to sufficiently plead materiality, the allegations of contributory infringement should be dismissed.

**5.      Conclusion**

Verizon respectfully requests that Plaintiffs' claims of induced infringement and contributory infringement be dismissed with prejudice.

Dated:  April 1, 2020

  /s/ *Deron R. Dacus*

| | |
|---|---|
| Deron R. Dacus<br>State Bar No. 00790553<br>**THE DACUS FIRM, P.C.**<br>821 ESE Loop 323, Suite 430<br>Tyler, TX 75701<br>Phone: (903) 705-1117<br>Fax: (903) 581-2543<br>ddacus@dacusfirm.com | Charles Verhoeven<br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>50 California Street, 22nd Floor<br>San Francisco, California  94111-4788<br>Telephone: 415-875-6600<br>Fax: 415-875-6700<br>charlesverhoeven@quinnemanuel.com<br><br>Patrick Curran<br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>111 Huntington Ave, Suite 520<br>Boston, Massachusetts 02199<br>Telephone: 617-712-7100<br>Fax: 617-712-7200<br>patrickcurran@quinnemanuel.com<br><br>Brianne M. Straka<br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>191 N. Wacker Dr., Suite 2700<br>Chicago, IL 60606<br>Telephone: 312-705-7400<br>Fax: 312-705-7401<br>briannestraka@quinnemanuel.com<br><br>John T. McKee<br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>51 Madison Avenue, 22nd Floor,<br>New York, NY 10010<br>Telephone: 212-849-7000<br>Fax: 212-849-7100<br>johnmckee@quinnemanuel.com<br><br>*Counsel for Verizon Communications, Inc., Cellco Partnership d/b/a Verizon Wireless & Verizon Business Network Services, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on April 1, 2020.

                                            */s/ Deron R. Dacus*
                                            Deron R. Dacus